

IN THE UNITED STATES COURT OF APPEALS

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

# In re: David A. Schum, *Petitioner*

---

# PETITION FOR WRIT OF MANDAMUS

---

## 13-1041

David Alan Schum, Pro Se
5051 Les Chateaux Drive
#139
Dallas, Texas 75235
469-206-6700
watchradio@aol.com


February 22, 2013

---

## RELIEF SOUGHT

Relator / Petitioner, David A. Schum, commences this proceeding to compel the Federal Communications Commission (hereinafter "FCC") to discharge its statutory and regulatory mandate and set for hearing the applications for transfer of radio licenses to KFCD, Farmersville, TX. and KHSE, Wylie, TX. from DFW Radio License, LLC to Bernard Radio Dallas, LLC as called for under 47 USC (1)(A) § 1.1.

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to D.C. Circuit Rule 28(a)(1), Petitioner presents the following list of all parties and the names and addresses of all counsel:

**1.      Relator, Petitioner (Petitioner in Underlying Action)**

David Alan Schum, Pro Se
5051 Les Chateaux Drive, #139 Dallas, Texas 75235

**2.      Respondents**

Federal Communications Commission – Media Bureau
Marlene H. Dortch, Secretary
445 Twelfth Street, S.W. Washington, D.C. 20554

**FCC Commissioners**
Julius Genachowski, Chairman
Robert McDowell, Commissioner, Mignon Clyburn, Commissioner
Jessica Rosenworcel, Commissioner, Ajit Pai, Commissioner

Peter Doyle, Chief, Audio Division, Media Bureau

---

**PETITION FOR WRIT OF MANDAMUS**
**In re: David A. Schum**

## FCC FILE NUMBERS IN UNDERLYING PROCEDING

File No. BAL-20072006ABA Facility ID # 43757

File No. BAL-20072006ABB Facility ID # 133464

## STATEMENT OF JURISDICTION

This Court may issue writs of mandamus pursuant to 28 U.S.C. § 1651 and is the only Court that may issue writs pertaining to the FCC. Sections 402(a) and (b) of The Act "comprise the entire statutory regime by which parties may obtain judicial review of Commission decisions." *Folden v. United States, 379 F.3d 1344, 1357 (Fed. Cir. 2004)*. Congress provided in 47 U.S.C. § 402(a) that "any proceeding to enjoin, set aside, annul, or suspend any order of the Commission" other than actions appealable under section 402(b) must be brought pursuant to Chapter 158 of Title 28. The pertinent jurisdictional provision in Chapter 158, 28 U.S.C. § 2342, provides that the courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend … or to determine the validity of all final orders of the Federal Communications Commission made reviewable by" section 402(a). In addition, section 402(b) provides the United States Court of Appeals for the District of Columbia Circuit with exclusive jurisdiction over the subject Petition.

Congress has narrowed jurisdictional review of certain FCC actions further. Congress has determined that the United States Court of Appeals for the District of Columbia Circuit has exclusive jurisdiction to review FCC actions regarding radio station license applications, transfers and assignments. 47 U.S.C. §§ 402(b)(3), (6); see, *La Voz Radio de la Communidad v. F.C.C., 223 F.3d 313, 317 (6th Cir. 2000); Rippe v. F.C.C., 528 F.2d 771 (6th Cir. 1976)* ("Section 402(b) enumerates categories of decisions and orders relating to radio and orders relating to radio licensing actions, including denial of applications for licenses, and provides for appellate jurisdiction over these actions in the Court of Appeals for the District of Columbia.").

Section 402(b) of the Communications Act of 1934, 47 U.S.C. § 402(b), provides that "[a]ppeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases," which include FCC actions granting or denying an application to transfer, assign or dispose of radio station licenses—the subject matter of the Petitioner's Application for Review at issue in the Petition. 47 U.S.C. §§ 402(a)(3),(a) (6). Pursuant to Congress' directive, actions under 47 U.S.C. § 402(b) have been assigned exclusively to the Court of Appeals for the District of Columbia Circuit.

*Folden, 379 F.3d at 1356* ("the D.C. Circuit's jurisdiction over claims that fall within subsection 402(b) is exclusive").

The FCC's action or lack thereof on the Petitioner's Application For Review of radio licensing activities would be subject to judicial review exclusively in the District of Columbia Circuit. 47 U.S.C. § 402(b). The Sixth Circuit has confirmed that "[t]his argument is foreclosed...not only by this Court's decision in Rippe, but also by the rule that when review of agency action is expressly committed to a designated court of appeals, that court of appeals has exclusive jurisdiction over 'any suit seeking relief that might affect' its future statutory power of review." *La Voz Radio, 223 F.3d at 318 (quoting, TRAC, 750 F.2d at 75): Telecomms. Research & Action Ctr. ("TRAC") v. F.C.C., 750 F.2d 70, 77 (D.C. Cir. 1984).*

In addition, the D.C. Circuit's exclusive jurisdiction applies with equal force to Petitioner's seeking a writ of mandamus under the Administrative Procedure Act for alleged agency inaction. The D.C. Circuit, in *TRAC*, addressed the issue of which court has proper jurisdiction over a petition to compel unreasonably delayed agency action. It concluded that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *TRAC, 750*

*F.2d at 72.* As the D.C. Circuit has stated, the exclusive jurisdiction encompasses petitions for mandamus and claims under the APA alleging agency inaction or unreasonable delay on matters that would be reviewable exclusively in the D.C. Circuit when the agency takes action. *TRAC, 750 F.2d at 75.*

The court in TRAC held that the statutory commitment of review of FCC action to the courts of appeals, and the exclusive commitment of review of radio licensing actions to the District of Columbia Circuit, in conjunction with the All Writs Act, 28 U.S.C. § 1651, "affords [the D. C. Circuit] jurisdiction over claims of unreasonable Commission delay." *TRAC, 750 F.2d at 75.* "By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." Id. at 77. The Administrative Procedure Act allows courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

## SUMMARY OF THE ISSUES PRESENTED

Petitioner seeks a writ of mandamus under the Administrative Procedure Act ("APA") 5 U.S.C. § 706(1) to compel the Federal Communications Commission ("FCC") to set for hearing the application to transfer radio licenses from DFW Radio License, LLC to Bernard Radio, LLC. In timely filings over an eight year period,

Petitioner has requested that a hearing be set nine times and the FCC has unlawfully withheld and unreasonably delayed setting a hearing.

This mandamus action arises from both an FCC decision and lack of action in which Relator, Petitioner in the underlying proceeding, David Alan Schum ("Petitioner") filed a Petition to Deny the Transfer of FCC licenses from DFW Radio License, LLC (a company that Petitioner holds a majority interest in) to Bernard Radio, LLC (a subsidiary of now defunct hedge fund D.B. Zwirn Special Opportunities Fund, L.P.) (Hereinafter "Zwirn" will refer to all entities associated with the defunct hedge fund including both those onshore and offshore). Petitioner has provided the FCC with substantial evidence that Zwirn, unbeknownst to Petitioner and in violation of Section 310 of the Communications Act of 1934 ("The Act"), used Cayman Island-based subsidiaries to provide loans to Petitioner's company as well as to fund and ultimately to control the Zwirn onshore hedge fund and the Zwirn hedge fund manager. In addition, Zwirn and their counsel have gone to great lengths to conceal the foreign entities, foreign shareholders, foreign partners, foreign funding and control of the hedge fund from Petitioner, the Dallas Bankruptcy Court and the FCC.

The FCC license transfer approval process relies on applicants to be truthful and transparent in providing ownership and background information. 47 USC (1)(A) § 1.17 (a)(1) & (a)(2). Lack of candor on the part of an applicant disqualifies the applicant from becoming a licensee.   47 USC (1)(A) § 1.934 (d)(1) & (d)(2). Petitioner has provided information to the FCC over the last 8 years demonstrating Zwirn has been anything but truthful and transparent. Section 310 of The Communications Act requires review of foreign ownership of applicants by the FCC.  Zwirn not only did not seek approval upon review but instead refused to disclose their foreign ownership at all. The Zwirn filings with the FCC disclose 1% of the total ownership.

Over the past eight years, Petitioner has requested in nine different filings that the FCC set for hearing the application for transfer of broadcast licenses from DFW Radio License, LLC to Bernard Radio Dallas, LLC as provided for under 47 USC (1)(A) § 1.1. Specifically, these requests occurred in filings dated February 23, 2006, March 29, 2007, March 20, 2008, May 14, 2008, September 4, 2008, June 19, 2009, October 22, 2011, February 21, 2012 and March 28, 2102. The FCC has ignored all nine requests made over this eight year period choosing instead to make rulings on

the petitions without requiring the necessary documentation from Zwirn. The FCC went a step further in a ruling on May 20, 2009 admonishing Petitioner "for filing frivolous and obstructive pleadings." Ironically, that was the same month the shareholders and partners voted to terminate the Zwirn management and replace them as a result of fraudulent activities. The effect of the admonishment on Petitioner was to leave him without counsel at a time when the necessary information regarding Zwirn's fraudulent activities, foreign ownership and funding was becoming public.

Furthermore, the FCC Commissioners have unreasonably delayed making a final decision on Petitioner's Application For Review which has been on file since June 19, 2009 and has been supplemented three times. Petitioner has also filed two Requests for Official Notice providing additional information regarding Zwirn's offshore funding activities and ownership.

According to the FBI, the delay on the part of the FCC in addressing the need for a hearing has possibly allowed the statute of limitations for fraud on Zwirn's part to expire. The delay has already and continues to jeopardize the health and welfare of those who have been waiting for years for a hearing to be scheduled and an informed decision rendered by the FCC.

The time has come for this Court to end the FCC's unreasonable delay and to compel the FCC to set a date certain for a hearing regarding the license transfers. In light of the documented disclosures regarding Zwirn's lack of candor, foreign ownership, foreign funding and the FCC refusal to deny the license transfer to Zwirn, it is obvious the FCC cannot make an informed decision regarding these contested transfers without a hearing that allows for discovery and testimony under oath. The hearing is also required to build an adequate record if needed on appeal.

The subject license transfer application is not the only application that would be affected by information obtained in the requested hearing as Zwirn preyed upon other radio licensees, and Zwirn's fraudulent activities impacted dozens of radio and television licenses.

The case at the FCC is styled In re Application of BERNARD DALLAS LLC and PRINCIPLE BROADCASTING NETWORK-DALLAS LLC for Assignment of License of KFCD (AM), Farmersville, Texas   File No. BAL-20072006ABA Facility ID # 43757 and For Assignment of License of KHSE (AM), Wylie, Texas File No. BAL-20072006ABB Facility ID # 133464.

Respondents are the five FCC Commissioners: Julius Genachowski - Chairman, Robert McDowell, Mignon Clyburn, Jessica Rosenworcel and Ajit Pai.

## STATEMENT OF FACTS NECESSARY TO UNDERSTAND THE ISSUES

Petitioner is the majority shareholder of the corporate limited partners and is the 100% shareholder of the corporate general partner of The Watch, Ltd. a Dallas, Texas limited partnership which is the sole owner of DFW Radio License, LLC. DFW Radio License, LLC was the licensee for the FCC license to AM 990 KFCD licensed to Farmersville, Texas and the construction permit to build AM 700 KHSE now a license and licensed to Wylie, Texas.

In 2003, Petitioner's company was forced into bankruptcy by a former employee, who later became associated with Zwirn,  some small investors and vendors in an attempt to gain control of one or both of the subject radio licenses. They were unsuccessful in their attempt and The Watch, Ltd. emerged from the bankruptcy in early 2004 with ownership basically unchanged and all creditors paid in full.

In February, 2004, The Watch, Ltd. procured a bankruptcy exit loan through the hedge fund Highbridge/Zwirn Special Opportunities Fund, L.P. acting as agent for the lender Bernard National Loan Investors, Ltd. At the time, the people representing the lender assured the petitioner and the Bankruptcy Court that the lender was

domestic and qualified to make loans to companies owning FCC licenses and construction permits.

Little was known about the Zwirn organizations at the time the loan was funded. Shortly thereafter, the people who assisted Petitioner in securing the loan – the Zwirn employee and the loan broker – ended their relationship with Zwirn when the Zwirn business model was revealed to be that of a predator lender. Despite having usurious interest and fee rates in the loans, Zwirn did not want the loan to be repaid. Instead Zwirn sought to "harvest assets" (as they described the process to their investors) from the companies borrowing from them. The Zwirn business model emerged as loaning 25% - 35% of the value of a company's assets, snaring the borrower in a violation of a loan document covenant, blocking any attempts to repay the loan, and overwhelming the borrower with a legal assault resulting in usurping the assets for pennies on the dollar. Zwirn attempted to have a receiver appointed by a Texas court to take control of the subject licenses. The Watch, Ltd., on advice of counsel, filed for bankruptcy to avoid having the stations taken over by a receiver.

Zwirn was the sole secured creditor in the bankruptcy proceeding and began a combative legal assault. They were represented by four attorneys from Vinson &

Elkins who ultimately billed in excess of $1,000,000 in order to take premature control of the FCC licenses, prevent refinancing and force a quick auction.

In October 2005 Zwirn, for the second time, represented to the Bankruptcy Court that they were not foreign-owned or controlled, and they were eligible to own FCC licenses. Zwirn acting as agent won the auction with a credit bid on behalf of the Cayman Island lender, Bernard National Loan Investors, Ltd.  In  January  2006 Zwirn made application to the FCC for transfer of the license and permit from DFW Radio License, L.L.C. to Bernard Radio, L.L.C. In their application, Zwirn refused ownership disclosure stating that all but 1% of the ownership were "insulated."

On February 23, 2006 the Petitioner and others involved with the company filed a Petition To Deny the transfer based upon undisclosed foreign ownership, taking premature control of the FCC licenses, and other issues. The Petitioners asked the FCC to set the application for hearing.

Since February 2006, Petitioner has requested to no avail, that the FCC set for hearing Zwirn's application on nine different filings including Petitions to Deny, Petitions for Reconsideration, Supplements to the Petitions, an Application for Review and Supplements to the Application for Review.

Hedge funds are by nature secretive organizations, and Zwirn was no exception. As pointed out above, 47 U.S.C. requires applicants to provide to the FCC complete and honest information so the FCC staff can make an informed and legal decision regarding license transfers that would be in the public's best interest. Zwirn chose to not disclose any of their ownership information. Inexplicably over the years of processing this application, the FCC has shifted the burden for disclosure of Zwirn's ownership from Zwirn the applicant, possessing the necessary information as well as having the responsibility to disclose it, to the Petitioner who possessed none of the information but has succeeded in procuring some as indicated below.

In the past eight years since the original application for license transfer, Petitioner has provided the FCC with substantial evidence to, if not deny Zwirn's application outright, at least set it for hearing so that the truth can be ascertained. The evidence had to be discovered by whatever means available to the Petitioner as again Zwirn was a highly secretive organization which is no longer in business. Today this evidence includes in part:

1.    A filing with the equivalent of the SEC of India indicating that 60% of the Zwirn partnership was offshore in violation of Section 310 of The Communications Act.

2.      The revelation that an initial and major shareholder and partner of the Zwirn funds is a convicted felon and registered sex offender who was imprisoned for predatory sexual exploitation of minor girls which should immediately preclude him from being an FCC licensee based on character issues - *RKO General, Inc. v. FCC.*

3.      A lawsuit brought by the U.S.SEC against the former CEO of Zwirn for fraudulent transfers of funds from the Cayman Island fund (offshore) to the onshore fund in the amount of $874 million dollars. The transfers occurred during the time Zwirn was making loans to the Petitioner's company as well as to other radio licensee companies. The fraudulent fund transfers were necessary to finance Zwirn's onshore fund as well as the Zwirn fund manager. According to documents filed in the lawsuit, without the fraudulent transfers from the offshore fund, the onshore fund and the Zwirn management company could not pay their expenses, fund loans and investment commitments and the business would have collapsed. Interestingly, the founder and CEO of the hedge funds, Daniel Bernard Zwirn, claimed to the SEC to have no knowledge of the fraudulent transfers

that kept his company afloat while at the same time he claimed to the FCC that he was the only person in charge of the company and the only "owner" disclosed to the FCC on ownership forms. As in the RKO decision, the corporate fraud and lack of candor would preclude Zwirn's license approval. RKO General, Inc. v. FCC, 670 F. 2d 215 - Court of Appeals, Dist. of Columbia Circuit 1981.

4.    A lawsuit involving the original lender to Petitioner's company in which the judge ruled in her finding of facts that Bernard National Loan Investors, Ltd. "is a specialized investment group based in the Cayman Islands." They are domiciled in the Ugland House in the Cayman Islands – the same Ugland House that President Barak Obama described as "either the biggest building or the biggest tax scam on record." The fact that the lender was an offshore (foreign) company was intentionally hidden from the Petitioner and the Bankruptcy Court. Zwirn did not qualify to be the original lender, and they certainly were not eligible to bid on the FCC licenses at the bankruptcy auction. Zwirn's lack of candor precludes licensee approval - 47 USC (1)(A) § 1.934 (d)(1) & (d)(2).

5.    The proxy provided to the shareholders of the Zwirn Cayman Island fund in May 2009 allowing the shareholders to vote the Zwirn management team out after the fraud was disclosed and be replaced with Fortress Investment Group. Fortress, in turn, was charged with liquidating the fund and distributing the resulting funds to both the onshore shareholders and offshore partners. This change of control of the fund assets was never disclosed to the FCC by Zwirn or Fortress. The proxy vote flies in the face of Zwirn's claim to the FCC that Daniel Bernard Zwirn was and is in control of the Zwirn companies. The proxy specifically prohibited Daniel Bernard Zwirn from any involvement with the funds after he was forced out. The lack of candor on the part of Zwirn and Fortress precludes licensee approval - 47 USC (1)(A) § 1.934 (d)(1) & (d)(2).

On April 14, 2011, Petitioner met with the FBI to file a request to investigate the fraud in the Bankruptcy Court and the FCC that D.B. Zwirn Special Opportunities Fund, L.P. and all of its related companies and funds have maintained to this day. The FBI informed Petitioner that they suspected the statute of limitations had expired for Zwirn's deception in the Bankruptcy Court. Petitioner has been advised that may not be the case.

In November, 2012, Petitioner became aware of a lawsuit in the US District Court Southern District of New York involving Bernard National Loan Investors, Ltd. and Traditions Management, LLC. The judge stated in her opinion and order that "Bernard is a specialized investment group based in the Cayman Islands that provides loans to commercial ventures." Bernard National Loan Investors, Ltd. was the specified lender for the exit loan to The Watch, Ltd. on February 5, 2004. Zwirn never disclosed to the bankruptcy court, to the Petitioner or to The Watch, Ltd. that they were a Cayman Island company as this would have disqualified them as an exit lender in the first place and subsequently as a participant in the bankruptcy auction. The discovery of this lawsuit is the first time Petitioner had proof the original lender in 2004 was a Cayman Island Company in violation of Section 310 of The Communications Act.

D.B. Zwirn Special Opportunities Fund, L.P. and the officers that represented them have deceived the Petitioner, the Dallas Bankruptcy Court and the FCC into believing they were a qualified entity to be approved by the FCC as FCC radio broadcast license owners. Zwirn misrepresented their qualifications in the Bankruptcy Court proceedings stating they would be approved by the FCC in less than three months. Zwirn then informed the FCC that they were awarded the FCC licenses by

the Bankruptcy Court. For over eight years they have refused to reveal the accurate ownership information necessary for final disposition of the license transfer application. Instead Zwirn played a shell game disclosing a variety of companies to the FCC with incomplete or inaccurate ownership (equity plus debt) information and voting control data. During this delay, the Zwirn hedge fund has ceased to exist, and they are approaching total liquidation which may jeopardize an adequate resolution of this case.

## <u>REASONS WHY THIS WRIT SHOULD ISSUE</u>

1.      The FCC has a duty to act on Petitioner's Application for Review within a reasonable time. Under the Administrative Procedures Act, the FCC has a duty to act "… with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." It is too late for the FCC to make this decision within a reasonable time as they have delayed this decision far beyond what would be considered reasonable by any reasonable person.

The FCC has failed to act within a reasonable time in connection with Petitioner's Application for Review as well as Petitioner's nine requests for

a hearing to be set. It has been over eight years since Petitioner first requested a hearing be set on this application transfer under 47 USC (1)(A) § 1.1. This delay could have been avoided had a hearing been conducted initially by the FCC or had Zwirn been truthful as required by FCC rules and regulations.

The delay has jeopardized the health and welfare of Petitioner and the others involved with the radio licensee, DFW Radio License, LLC. They have had their lives impeded for a frustrating eight years with their life savings fraudulently seized from them. Considering that only one person at the FCC has ruled on all of the Zwirn applications, not just the Petitioner's, and has refused to require transparency on the part of Zwirn, it is hard to examine this case without suspecting impropriety. That being said, this "court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *PCHRG v. FDA, 740 F.2d at 34. See TRAC.*

Petitioner has no adequate remedy at law and is being irreparably harmed by the malfeasance of the FCC. A writ should issue compelling the FCC to act upon Petitioner's request for a hearing to be set.

2.    Zwirn has lacked candor with their investors, employees, the SEC, Petitioner, the Dallas Bankruptcy Court and the FCC. The application process for FCC licenses cannot work in the best interest of the public if applicants lack candor as prohibited under 47 USC (1)(A) § 1.934 (d)(1) & (d)(2). Petitioner has provided the FCC with substantial proof that Zwirn has lacked candor from day one of their association with Petitioner including all applications to the FCC and representations made in Federal Bankruptcy Court. This lack of candor precludes the FCC from approving Zwirn as a licensee. The FCC has a statutory obligation to make a determination on whether Zwirn's licenses should be revoked. Petitioner has no adequate remedy at law and is being irreparably harmed by the malfeasance of the FCC. A writ should issue compelling the FCC to act upon Petitioner's request for a hearing to be set so that all the information needed to make a determination is available to the FCC.

3.    The burden of proof of Zwirn's foreign ownership was wrongly shifted by the FCC from Zwirn to the Petitioner. Under Section 310 of the Communications Act, the FCC is required to review the foreign investments in radio license applicants. This has never been performed. The FCC cannot

---

**PETITION FOR WRIT OF MANDAMUS**
In re: David A. Schum

possibly make a proper and informed decision without a hearing in order to build a proper record not solely for the application decision, but a record in the event an appeal is appropriate.

Individuals who have been in the radio business for decades have indicated to the Petitioner they have never seen an assault on radio licensees by a predator like Zwirn. Instead of close scrutiny by the FCC as required by law, one employee of the FCC has chosen to ignore Zwirn's obvious foreign ownership issues. Instead, he approved all of the Zwirn applications based solely upon a check mark in a box on these forms. The FCC's inaction has unreasonably delayed the appropriate outcome of the subject applications. Petitioner has no adequate remedy at law and is being irreparably harmed by the malfeasance of the FCC. A writ should issue compelling the FCC to act upon Petitioner's request for a hearing to be set so that all the information needed to make a determination in the best interest of the public is available to the FCC and the Petitioner.

WHEREFORE Petitioner respectfully requests a Writ of Mandamus directing the FCC to set the subject applications for hearing if the FCC does not immediately revoke the approval of license transfer from DFW Radio License, LLC to Bernard Radio, LLC. based upon information already provided to the FCC.

Respectfully Submitted,

David Alan Schum, Pro Se
5051 Les Chateaux Dr., #139
Dallas, Texas 75235
469-206-6700
Email: watchradio@aol.com

February 22, 2013

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent by first class mail in compliance with Rule 25 (b) and 25 (c)(1)(B) of the RULES OF THE DISTRICT OF COLUMBIA COURT OF APPEAL on February 22, 2013 to those listed below.

Julius Genachowski, FCC Chairman
Robert McDowell, FCC Commissioner
Mignon Clyburn, FCC Commissioner
Jessica Rosenworcel, FCC Commissioner
Ajit Pai, FCC Commissioner
Peter Doyle, Chief, Audio Division, Media Bureau

>   Federal Communications Commission – Media Bureau
>   Marlene H. Dortch, Secretary
>   445 Twelfth Street, S.W. Washington, D.C. 20554

Daniel Bernard Zwirn – RL Transition Corporation
>   Represented by:
>   Aaron P. Shainis, Esquire, Shainis & Peltzman 1850 M Street, NW, Suite 240 Washington, DC  20036


Fortress Investments Group
Fortress Value Recovery Fund 1 LLC (formerly known as D.B. Zwirn Special Opportunities Fund, L.P. - domiciled in New York, New York and D.B. Zwirn Special Opportunities Fund, Ltd. - domiciled in the Cayman Islands)
Zwirn Holdings, LLC, D.B. Zwirn & Co., L.P., DBZ GP, LLC
Bernard Dallas, LLC, Bernard Radio, LLC.
Bernard National Loan Investors, Ltd. (Cayman Islands)
>   Represented by:
>   Gregory L. Masters, Esquire, Wiley Rein, LLP, 1776 K Street, NW Washington, DC  20006

DBZ, Co. Advisory Council
      Represented by:
      Maples and Calder, Ugland House, South Church Street
      George Town, Grand Cayman KY1-1104 Cayman Islands

Principle Broadcasting Network – Dallas, LLC
      Represented by:
      Richard R. Zaragoza, Esquire, Pillsbury Winthrop Shaw Pittman LLP
      2300 N Street, NW Washington, DC  20037

U.S. House of Representatives, Committee on Energy and Commerce
      Attention:
      Neal Fried, Esquire, 2125 Rayburn House Office Building
      Washington, DC 20515

Federal Bureau of Investigation, White Collar Crime Division
      Attention:
      Gregory Barnes, One Justice Way, Dallas, Texas 75220


By:_____
      DAVID SCHUM, Pro Se

February 22, 2013